**GLOBAL LEGAL LAW FIRM**
James C. Huber (SBN 269488)
jhuber@attorneygl.com
Joshua J. Herndon (SBN 244106)
jherndon@attorneygl.com
322 Encinitas Blvd, Suite 200
Encinitas, CA 92024
Telephone: (888) 846-8901
Facsimile: (888) 846-8902

Attorneys for Plaintiff and Cross-Defendant,
CARDFLEX, INC. d/b/a CLIQ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARDFLEX, INC. d/b/a CLIQ,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL MANAGERS, LLC, a Delaware limited liability company; EVENTUS HOLDINGS, LLC, a Delaware limited liability company; PAYSAFE SERVICES (US) CORP d/b/a MERITCARD, a Delaware corporation; and CYNERGY DATA LLC d/b/a PRIORITY PAYMENT SYSTEMS, a Delaware limited liability company,<br><br>Defendants. | Case No.:<br><br>**NOTICE OF *EX PARTE* APPLICATION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Please take notice that Plaintiff Cardflex, Inc. d/b/a Cliq ("Cliq") shall appear by and through its counsel of record *ex parte* on ________________________________________ (date) at _________________ (time) in Department _____ of the United States District Court, Central District of California, Southern Division, the Ronald Reagan Federal Building and United States Courthouse, located at 411 West 4th Street, Room 1053, Santa Ana, CA 92701-4516, and move the Court *ex parte* for a Temporary Restraining Order and Preliminary



GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

Injunction ("Order").

The requested injunctive relief would: 1) prohibit defendants Eventus Holdings LLC ("Eventus") and Capital Managers LLC ("Capital Managers") from accepting future residual payments under the Redirection Agreements from defendants Paysafe Services (US) Corp d/b/a Meritcard ("Paysafe") or Cynergy Data LLC d/b/a Priority Payment Systems ("Priority"); and 2) prohibit Paysafe and Priority from redirecting to Capital Managers and/or Eventus future residual payments owed to Cliq, or alternatively, direct Paysafe and Priority to interplead and deposit the residual revenue streams subject to the Redirection Agreements with the Court.

The *Ex Parte* Application shall be based on this Notice, the Memorandum of Points and Authorities in support thereof, the Complaint, the Declaration of James C. Huber and Andrew Phillips in support, the Verdict in the Companion Case, supporting exhibits, and arguments of counsel at the hearing of this *Ex Parte* Application.

Respectfully submitted,

Dated: November 26, 2024

**GLOBAL LEGAL LAW FIRM**

By: *__/s/ James C. Huber__*

James C. Huber, Esq.
Joshua J. Herndon, Esq.
Chuanchi "Tren" Tang, Esq.
Attorneys for Plaintiff,
CARDFLEX, INC. d/b/a CLIQ

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

## MEMORANDUM OF POINTS AND AUTHORITIES

Cliq brings this *Ex Parte* Application for temporary restraining order and preliminary injunction ("TRO") alongside the verified Complaint for Declaratory Judgment and Injunctive Relief ("Complaint").

## NATURE OF TRO AND PRELIMINARY INJUNCTION SOUGHT

**1) Accepting Payments under Redirection Agreements:** Cliq brings the TRO for an order prohibiting Capital Managers and Eventus from:

a) accepting future payments pursuant to the "Residual Redirection Agreement" entered into between Paysafe, Cliq, and Capital Managers on or about October 20, 2017;

b) accepting future payments pursuant to the "Redirection Agreement" entered into between Paysafe, Cliq and Capital Managers on or about January 16, 2018;

c) accepting future payments pursuant to the "Direction Agreement" entered into between Priority, Cliq and Capital Managers on or about November 29, 2017;

d) accepting future payments pursuant to any and all other redirection agreements entered into between Paysafe, Priority, Cliq, Capital Managers, and/or Eventus similar to the agreements referenced above in Parts 1a through 1d (collectively, the "Redirection Agreements");

**2) Making Payments under Redirection Agreements**: Cliq brings the TRO for an order prohibiting Paysafe and Priority from making future payments owed to Cliq pursuant to any of the Redirection Agreements referenced above in Parts 1a through 1d to Capital Managers, Eventus, or any entity other than Cliq.

**3) (Alternative) Interpleader**: Alternative to Part 2 above, Cliq brings the TRO for an order directing Paysafe and Priority to interplead and deposit the residual revenue streams subject to the Redirection Agreements referenced above with the Court, pending resolution of this action.

## FACTUAL BACKGROUND

Cliq and all defendants are businesses participating in the electronic payment

processing industry. When consumers use credit or debit cards to pay merchants for goods or services, the merchants relay transaction data to payment processors. Payment processors analyze the transaction data and relay the data to banks for payment. Defendants Paysafe and Priority are payment processors. Cliq is an Independent Sales Organization (hereafter "ISO"). An ISO solicits and onboards new merchants with payment processors and provides services to existing merchants.

**A. <u>The ISO Agreements</u>**

On or about August 7, 2017 or September 5, 2017, Cliq and Paysafe entered into that certain "BIN Transfer Agreement" ("First Paysafe ISO Agreement"), under which Cliq was entitled to receive monthly commissions from Paysafe, earned by Cliq for soliciting and onboarding merchants with Paysafe.

On October 9, 2017, Cliq and Paysafe entered into that certain "Independent Contractor Agreement" ("Second Paysafe ISO Agreement"), under which Cliq was entitled to receive monthly commissions from Paysafe, earned by Cliq for soliciting and onboarding merchants with Paysafe.

On October 5, 2011, Cliq and Priority entered into that certain "ISO Processing Agreement" ("Priority ISO Agreement," and collectively with the First Paysafe ISO Agreement and the Second Paysafe ISO Agreement, the "ISO Agreements"), under which Cliq was entitled to receive monthly commissions from Priority, earned by Cliq for soliciting and onboarding merchants with Priority.

These commissions are referred to in all agreements mentioned herein as a "residual revenue stream," "residual payments," or simply "residuals".

**B. <u>The Portfolio Purchase Agreements</u>**

On October 19, 2017, Cliq and Capital Managers entered into that certain "Portfolio Purchase Agreement" ("PPA-1"). Cliq entered the PPA-1 with the understanding that it was a loan agreement. Under the PPA-1, in exchange for Capital Managers' agreement to conditionally pay to Cliq over 60 months an amount, referenced therein as "Purchase Price", totaling $2,347,782, Cliq agreed to assign to

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

Capital Managers Cliq's right to receive two residual revenue streams - under the First Paysafe ISO Agreement and the Priority ISO Agreement - and to guarantee that these residual revenue streams would produce a total income of $3,887,042 over 60 months. Under the PPA-1, Capital Managers was required to remit to Cliq each month all residual payments in excess of Cliq's repayment obligation for that month.

On December 4, 2017, Cliq and Capital Managers entered into another "Portfolio Purchase Agreement" ("PPA-2"). Cliq entered the PPA-2 with the understanding that it was a loan agreement. Under the PPA-2, in exchange for Capital Managers' agreement to conditionally pay to Cliq over 60 months an amount, referenced therein as "Purchase Price", totaling $1,591,500, Cliq agreed to assign to Capital Managers Cliq's right to receive three residual revenue streams - under the First Paysafe ISO Agreement, Second Paysafe ISO Agreement, and Priority ISO Agreement - and to guarantee that these residual revenue streams would produce a total income of $2,635,087. Under the PPA-2, Capital Managers was required to remit to Cliq each month all residual payments in excess of Cliq's repayment obligation for that month.

On October 16, 2019, Cliq and Eventus Holdings entered into that certain "Portfolio Purchase Agreement" ("PPA-3"). Cliq entered the PPA-3 with the understanding that it was a loan agreement. Under the PPA-3, in exchange for Eventus Holdings' agreement to conditionally pay to Cliq over 60 months an amount, referenced therein as "Purchase Price", totaling $1,650,182, Cliq agreed to assign to Eventus Holdings Cliq's right to receive three residual revenue streams - under the First Paysafe ISO Agreement, Second Paysafe ISO Agreement, and Priority ISO Agreement - and to guarantee that these residual revenue streams would produce a total income of $2,304,892. Under the PPA-3, Eventus Holdings was required to remit to Cliq each month all residual payments in excess of Cliq's repayment obligation for that month.

PPA-1, PPA-2, and PPA-3 are referred to herein collectively as the "PPAs". The

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

repayment obligation under each of these PPAs is referred to herein as Excess Residuals.

**C. The Redirection Agreements**

On October 20, 2017, Paysafe entered into that "Residual Redirection Agreement" with Cliq and Capital Managers ("First Paysafe Redirection Agreement"), under which Paysafe redirected and paid Residual Payments to Capital Managers, funds that Paysafe owed to Cliq under the First Paysafe ISO Agreement. (Huber Decl. ¶ 2 and Exhibit 1.)

On January 16, 2018, Paysafe entered into that "Redirection Agreement" with Cliq and Capital Managers ("Second Paysafe Redirection Agreement"), under which Paysafe redirected and paid Residual Payments to Capital Managers, funds that Paysafe owed to Cliq under the Second Paysafe ISO Agreement. (Huber Decl. ¶ 3 and Exhibit 2.)

On November 29, 2017, Priority entered into that "Direction Agreement" with Cliq and Capital Managers ("Priority Redirection Agreement"), under which Priority redirected and paid Residual Payments to Capital Managers, funds that Priority owed to Cliq under the Priority ISO Agreement. (Huber Decl. ¶ 4 and Exhibit 3.)

Cliq entered into the First Paysafe Redirection Agreement, the Second Paysafe Redirection Agreement, and the Priority Redirection Agreement to perform its obligations under the PPAs.

Under the Redirection Agreements, funds called "residual revenue streams" that were owed to Cliq by Paysafe and Priority were redirected to Capital Managers to satisfy Cliq's obligations under the PPA-1 and PPA-2.

Although Eventus was not a party to any of the Redirection Agreements, certain residual revenue streams that were owed to Cliq by Paysafe and Priority under the ISO Agreements were redirected to Eventus to satisfy Cliq's obligations under the PPA-3.

**D. The Redirection Agreements Not Referenced in the Portfolio Purchase Agreements**

The PPA-1 (between Cliq and Capital Managers) references the First Paysafe

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

ISO Agreement and the Priority ISO Agreement. The PPA-1 does not reference the First Paysafe Redirection Agreement or the Priority Redirection Agreement.

The PPA-2 (between Cliq and Capital Managers) references the First Paysafe ISO Agreement, the Second Paysafe ISO Agreement, and the Priority ISO Agreement. The PPA-2 does not reference the First Paysafe Redirection Agreement, the Second Paysafe Redirection Agreement, or the Priority Redirection Agreement.

The PPA-3 (between Cliq and Eventus Holdings) references the First Paysafe ISO Agreement, the Second Paysafe ISO Agreement, and the Priority ISO Agreement. The PPA-3 does not reference the First Paysafe Redirection Agreement, the Second Paysafe Redirection Agreement, or the Priority Redirection Agreement.

It is Cliq's understanding that no redirection agreement exists that permits either Paysafe or Priority to pay Eventus any residual revenue stream owed to Cliq.

**E. <u>The Companion Case</u>**

In January 2021, Capital Managers and Eventus began withholding from Cliq payments of the Purchase Price and Excess Residuals, and have continued to do so to the present day, in direct breach of the PPA-1, PPA-2, and PPA-3.

On September 13, 2021, Cliq filed a lawsuit (the "Companion Case") against Capital Managers, Eventus, and certain individual defendants in the Superior Court of California, Orange County, Case No. 30-2021-01220754-CU-BC-CJC, wherein Cliq brought causes of action against Capital Managers for breaches of the PPA-1 and PPA-2, and against Eventus for breach of the PPA-3. Cliq brought these causes of action for breach of contract to recover the withheld payments of Purchase Price and Excess Residuals. (See Huber Decl. ¶ 5 and Exhibit 4.)

On October 29, 2024, after a seven-week trial, the jury returned a verdict ("Verdict") awarding Cliq $5,400,000 against Capital Managers and Eventus for breaches of the PPA-1, PPA-2, and PPA-3, and additional damages for other claims and against other defendants; the jury awarded those defendants nothing on their cross-claims against Cliq. (See Huber Decl. ¶ 6 and Exhibit 5.)

### F. Cliq's Post-Trial Demands Are Rejected

On October 30, 2024, counsel for Cliq, Mr. James Huber, emailed counsel for Capital Managers and Eventus, Mr. Oliver Griffin, requesting that his clients immediately terminate, among other things, the Redirection Agreements, under which residual payments owed to Cliq by Paysafe and Priority are still being redirected every month to Capital Managers and Eventus. Mr. Griffin emphatically declined Mr. Huber's requests, despite the Verdict, and proposed that Mr. Huber submit a detailed legal memorandum to him explaining why his clients should comply with his requests. (Huber Decl. ¶ 7 and Exhibit 6.)

On October 31, 2024, Mr. Huber emailed Mr. Gary Nye, in-house counsel for Paysafe, requesting that Paysafe immediately terminate all redirection agreements currently redirecting residual funds belonging and owed to Cliq to Capital Managers and Eventus. In a phone call that followed, Mr. Nye indicated that Paysafe would comply with this request only in response to a court order. (Huber Decl. ¶ 8 and Exhibit 7.)

On October 31, 2024, Mr. Huber emailed Mr. Edward Marshall, in-house counsel for Priority, requesting that Priority immediately terminate all redirection agreements currently redirecting residual funds belonging and owed to Cliq to Capital Managers and Eventus. In a phone call that followed, Mr. Marshall indicated that Priority would not comply with this request but would consider interpleading the residual funds to the Court. (Huber Decl. ¶ 9 and Exhibit 8.)

On November 6, 2024, Mr. Huber sent a follow-up email to Mr. Marshall and Mr. Nye about his respective conversations with them about the above items. Mr. Marshall and Mr. Ney both confirmed on behalf of the respective company they represent that Paysafe and Priority did not want to insert themselves in the dispute, but that they would agree to follow any court order, and that they would likely be amenable to interpleading the funds with a court. Mr. Marshall and Mr. Nye each responded to Mr. Huber's email on November 6, 2024, and confirmed that Priority and Paysafe would each follow any binding court order. (Huber Decl. ¶ 10 and Exhibit 9.)

Global Legal Law Firm
322 Encinitas Blvd., Suite 200
Encinitas, CA 92024
(888) 846-8901

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

### G. <u>The Orange County Superior Court Denied a Similar Injunction Motion Without Prejudice</u>

On November 7, 2024, Cliq filed an ex parte application in the Companion Case for injunctive relief similar to that sought herein. That application was opposed by Capital Managers and Eventus. The court in the Companion Case denied the requested relief without prejudice. (Huber Decl. ¶ 11 and Exhibit 10.) The court reasoned that: 1) there was no factual showing of irreparable harm, immediate danger, or emergency sufficient to justify *ex parte* relief; 2) the injunctive relief Cliq sought therein was not requested in any pleading; and 3) the third parties Paysafe and Priority had not been brought under the court's jurisdiction. The court did not grant Cliq permission to amend its complaint to remedy the second and third prongs of the court's ruling.

## <u>LEGAL STANDARD</u>

A plaintiff who seeks a preliminary injunction or temporary restraining order must establish four elements: 1) that it likely will succeed on the merits; 2) that it likely will suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in its favor; and 4) that an injunction will serve the public interest. *Rosebud Sioux Tribe v. Trump*, 495 F. Supp. 3d 968, 975 (D. Mont. 2020); *Imperial Sovereign Ct. of Montana v. Knudsen*, 684 F. Supp. 3d 1095, 1102 (D. Mont. 2023).

## <u>ARGUMENT</u>

### A. <u>Cliq's Likelihood of Success on the Merits</u>

#### 1. The Jury Found That Capital Managers and Eventus Breached the PPAs

Cliq is likely to prevail on the merits. The jury in the Companion Case had already found that Capital Managers and Eventus materially breached each of their respective PPAs. Specifically, the jury found that:

1) Each of the PPAs was a valid contract;
2) Cliq performed all of its obligations under each of the PPAs;
3) Capital Managers failed to do something that PPA-1 and PPA-2 required it

to do, or did something it was prohibited from doing under those agreements;

4) Eventus failed to do something that PPA-3 required it to do, or did something it was prohibited from doing under that agreement;

5) Cliq was harmed by these defendants' breaches of contract, and these breaches of contract were a substantial factor in causing that harm; and

6) Both defendants failed to act fairly and in good faith.

**2. The Jury Found Cliq Did Not Breach Any Contract**

The jury also fully found in favor of Cliq on Capital Managers and Eventus' cross-claims against Cliq for breaches of the same PPAs, determining again that neither Capital Managers nor Eventus performed their obligations under their respective contracts.

**3. Defendants' Breaches Terminated the Redirection Agreements**

It is well-settled contract law that a material breach of contract excuses further performance by the innocent party. *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602 (2012). Because both Capital Managers and Eventus have materially breached the PPAs, these defendants are no longer entitled to receive Cliq's performance thereunder, i.e., the residual revenue streams being redirected to them by Paysafe and Priority pursuant to the Redirection Agreements.

Neither Capital Managers nor Eventus is justified in refusing to terminate the Redirection Agreements. Therefore, Cliq is likely to prevail on its claim that it is entitled to the resumed payment of residuals under the ISO Agreements.

**4. <u>Jurisdiction over Paysafe and Priority</u>**

Jurisdiction over Paysafe and/or Priority would not be an issue here, nor would it be required to grant the injunctive relief Cliq seeks. Both Paysafe and Priority have indicated that they would comply with a court order to terminate the Redirection Agreements. But no consent to terminate these agreements is required in the first place from Paysafe or Priority.

Although the Paysafe Redirection Agreements provide in section 1 therein that

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD., SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

the "instruction [to redirect Residual Payments] may be changed or voided only upon the written agreement of Cliq, MeritCard [Paysafe's predecessor in interest] and Capital Managers signed by each", no consent should be required from Paysafe because Paysafe derives no independent benefit from the Paysafe Redirection Agreements. The "termination" clause in section 1 of those agreements is properly interpreted to mean that Paysafe requires only the consent of Capital Managers to stop the redirection. The Court need only direct Capital Managers to instruct Paysafe to stop payment.

Similarly, the Priority Redirection Agreement can be stopped without Priority's consent. Section 2 therein only specifies that all payments shall be redirected to Capital Managers until "Funding Provider" (i.e., Capital Managers) provides alternative instructions to Cynergy, Priority's predecessor in interest. In short, Capital Managers holds the keys to stop redirection. The Court need only direct Capital Managers to instruct Priority to stop payment.

Accordingly, while neither Paysafe nor Priority would contest jurisdiction, no jurisdiction over these parties is required in the first place. The Court should direct Capital Managers to instruct Paysafe and Priority to stop payment to Capital Managers and Eventus, which was not a party to the Redirection Agreements in the first place. The Court should also instruct Eventus to stop accepting payments from Paysafe and Priority that are owed to Cliq.

But because it is likely that Capital Managers and Eventus will both oppose the TRO and refuse to comply with the Order, the Court, for the sake of judicial expediency, should also direct Paysafe and Priority to stop making additional payments to Capital Managers and Eventus under the Redirection Agreements or PPAs.

### B. Cliq Will Suffer Irreparable Harm Without the Injunction

Cliq has suffered, and will continue to suffer, irreparable harm if the TRO is denied. Cliq is a for-profit business, and it relies on the residual revenue streams subject to the ISO Agreements to pay for its operating expenses. Moreover, the trial in

Global Legal Law Firm
322 Encinitas Blvd., Suite 200
Encinitas, CA 92024
(888) 846-8901

the Companion Case was continued several times at defendants' requests. In large part due to the delay of the trial in the Companion Case, the Redirection Agreements have continuously harmed Cliq and are continuing to harm Cliq, especially given the defendants' refusal to comply with Cliq's lawful requests based on the Verdict. (See Declaration of Andrew Phillips ["Phillips Decl."] at ¶ 2.)

Cliq is unable to absorb the weight of this continued wrongful withholding of residuals without dire consequences. (Phillips Decl. ¶ 3.)

Every month that Cliq fails to recover these funds is another month that Cliq must sink deeper into debt. (Phillips Decl. ¶ 4.)

Each month, Cliq has to pay its sales agents commission on the amounts withheld by Defendants. That commission is typically upwards of 70% of the amount received and in some cases is upwards of 90%. This means that Cliq is losing almost double the amount withheld. Each month, the amount withheld is in excess of $120,000. And during the months of November through January, with holiday spending, travel, etc., this amount skyrockets and should be closer to $200,000. (Phillips Decl. ¶ 5.)

For as long as Cliq is denied residual payments as a result of the Redirection Agreements, Cliq will not be able to fund its December 2024 payroll, make its tax payments before the end of 2024, or pay residuals (commissions) to its sales agents for December 2024. (Phillips Decl. ¶ 6.)

**C. Balances of Equities Tips in Cliq's Favor**

On the other hand, no harm will come to Paysafe or Priority from terminating the Redirection Agreements because it will not make any difference to them to whom they must pay the residual revenue streams. The amount they must pay is the same regardless of whom they pay.

Neither Capital Managers nor Eventus is entitled to any further payments of Cliq's residuals, given their material breaches of the PPAs as the Verdict confirmed. Equitable principles demand that the residual revenue streams be immediately restored to Cliq.

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

**D. The Injunction Will Serve the Public Interest**

Cliq relies upon the residual revenue streams to pay for its operating expenses, including payroll for its employees. If Cliq becomes unable to meet its payroll obligations, which is expected to occur in December 2024 if the residual revenue streams are not restored to Cliq, Cliq would be forced to reduce its workforce, causing many valued employees and agents to lose their livelihood. The public interest would be served by granting the TRO and keeping Cliq's employees and agents paid on time.

**E. Notice of the TRO will be Provided to All Affected Parties**

Cliq will provide notice of the TRO to all affected parties, upon receipt from the Court of the date and time for the hearing of the TRO. (Huber Decl. ¶¶ 12-14.) Capital Managers and Eventus do not require the statutory notice period for motions to oppose this TRO because they have already opposed a nearly identical injunction motion in the Companion Case and are familiar with the facts and arguments contained therein. (Huber Decl. ¶ 15 and Exhibit 14.) Paysafe and Priority do not require the statutory notice period because they already indicated they would not contest the TRO and would comply with a court order terminating the Redirection Agreements or directing Paysafe and Priority to interplead the contested residual revenue streams.

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

**CONCLUSION**

For the foregoing reasons, Cliq respectfully requests that the Court grant the TRO in full.

Respectfully submitted,

Dated: November 26, 2024 **GLOBAL LEGAL LAW FIRM**

By: */s/ James C. Huber*

James C. Huber, Esq.
Joshua J. Herndon, Esq.
Chuanchi "Tren" Tang, Esq.
Attorneys for Plaintiff,
CARDFLEX, INC. d/b/a CLIQ

GLOBAL LEGAL LAW FIRM
322 ENCINITAS BLVD, SUITE 200
ENCINITAS, CA 92024
(888) 846-8901

## CERTIFICATE OF SERVICE

I, JAMES C. HUBER, hereby certify that on November 26, 2024, I caused to be electronically filed **NOTICE OF EX PARTE APPLICATION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**, with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail, electronic mail, or by other means permitted by the court rules.

Dated: November 26, 2024 **GLOBAL LEGAL LAW FIRM**

By: */s/ James C. Huber*
James C. Huber
Joshua J. Herndon
Attorneys for Plaintiff,
CLIQ, INC.